## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DEBRA SCHLOSSER, *et al.*,     ) | |
|       Plaintiffs,     ) | Civil Action No. 04-140J (Consolidated with |
| v.     ) | C.A. Nos. 04-23J and 04-141J) |
| STEPHEN G. LYRAS, *et at.*,     ) | |
|       Defendants and     ) | JUDGE GIBSON |
|       Third-Party Plaintiffs,     ) | |
| v.     ) | |
| MERLE SMITH, *et al.*,     ) | |
|       Third-Party Defendants.     ) | |
| DARLENE DAVIES, *et al.*,     ) | |
|       Plaintiffs,     ) | Civil Action No. 04-141J |
| v.     ) | (Consolidated at C.A. No. 04-140J) |
| STEPHEN LYRAS, *et al.*,     ) | |
|       Defendants and     ) | |
|       Third-Party Plaintiffs,     ) | |
| v.     ) | |
| MERLE SMITH, *et al.*,     ) | |
|       Third-Party Defendants     ) | |
| LIBERTY MAINTENANCE, *et al.*,     ) | |
|       Plaintiffs,     ) | Civil Action No. 04-23J |
| v.     ) | (Consolidated at C.A. No. 04-140J) |
| MERLE SMITH, *et al.*,     ) | |
|       Defendants.     ) | |

# Memorandum Opinion and Order of Court

**GIBSON, J.**

This matter comes before the Court on a Motion to Dismiss pursuant to Federal Rule of Civil

Procedure 12(b)(1) for lack of subject matter jurisdiction (Document No. 71), filed by the United States

of America (hereinafter "United States"), and on Motions for Summary Judgment filed by Larry Moore

(hereinafter "Moore"), River Hill Coal Company, Inc. (hereinafter "River Hill"), Terry P. Kiefer

(hereinafter "Kiefer") and Merle Smith (hereinafter "Smith") (Document Nos. 58, 108 (Errata for

Document No. 58), and 76-77). For the reasons stated herein, the Motion to Dismiss filed by the United States (Document No. 71) is granted, the Motion for Summary Judgment filed by Moore and River Hill (Document Nos. 58 and 108) is granted, and the Motions for Summary Judgment filed by Smith and Kiefer (Document Nos. 76 and 77) are denied.

## I.    Background[1]

The case pending before the Court is a consolidated action arising from a serious automobile accident which occurred at approximately 10:00 a.m. on June 26, 2002. The accident, which involved at least three vehicles, took place on the westbound lanes of Interstate 80 near Bradford Township, Clearfield County, Pennsylvania. Document No. 72, Attachment 1. The involvement of a fourth vehicle, which was not directly impacted, is alleged by some of the parties and denied by others. A passenger of Plaintiff Debra Schlosser's (hereinafter "Schlosser") vehicle, Genevieve Zwick was fatally injured as a result of this accident.

One of the vehicles was a vacuum truck operated by Stephen G. Lyras (hereinafter "Lyras"), who was acting as an employee of Liberty Maintenance, Inc. (hereinafter "Liberty"). Another vehicle involved in the crash was a sport utility vehicle (hereinafter "SUV") owned by the United States and operated by Schlosser, an employee of the United States Veterans Administration. The third vehicle involved was a tractor trailer owned by Kiefer Transport and operated by Smith, a Kiefer Transport employee. The fourth vehicle, which was not directly impacted, was operated by Moore, who was

---

[1]For the benefit of the reader, the following is simply a brief summary of the factual background for the present civil action, and is not to be viewed as a detailed recitation of the facts upon which the summary judgment motions have been evaluated. The facts relied upon for evaluating the summary judgment motions are set forth later in this Memorandum Opinion.

acting as an employee of River Hill. At the time of the accident, there were five Veterans Administration volunteers riding in the SUV driven by Schlosser. Document No. 49, p. 2. They were Darlene Davies (hereinafter "Davies"), Margaret Frederick (hereinafter "Frederick"), William Zwick and Genevieve Zwick (collectively hereinafter "Zwicks"), and John Zrelock (hereinafter "Zrelock"). Document No. 49, p. 2. Davies was in the front passenger seat, while the other four were seated behind Davies and Schlosser.

According to the police report, which was completed by Trooper Richard L. Magnuson (hereinafter "Trooper Magnuson"), the crash occurred as Lyras' vacuum truck was traveling behind Schlosser's SUV on the left westbound lane of Interstate 80. Document No. 72, Attachment 2, p. 9. Smith's tractor-trailer was traveling in the right westbound lane of Interstate 80, going in the same direction. The initial impact occurred when the vacuum truck struck the SUV from behind. Document No. 72, Attachment 1, Attachment 2, p. 9. The collision forced the SUV into the right lane, causing it to collide with the rear tandem of the tractor trailer. Document No. 72, Attachment 2, p. 9. Having been impacted twice, the SUV rolled over and stopped on the south side of the road, coming to final rest on its roof. Document No. 72, Attachment 2, p. 9. After the initial impact in the left lane, the vacuum truck traveled along the south side embankment and rolled onto its right side. The tractor trailer stopped just off of the right side of the road. At the time of the accident, the Dodge Intrepid operated by Moore was traveling in the left lane, ahead of the vehicles involved in the accident. Document No. 72, Attachment 1.

In the aftermath of the accident, Moore told Trooper Magnuson that he had seen the first collision in his rearview mirror. Document No. 72, Attachment 2, pp. 10-11. Smith, who was also

3

interviewed at the scene, told Trooper Magnuson that he had heard the sound of the first impact while

traveling in the right lane, and that the SUV was knocked into the rear end of his tractor-trailer.

Document No. 72, Attachment 2, p. 11. Clearfield County Deputy Coroner Lynda Bryden pronounced

Genevieve Zwick dead at the scene of the accident. Document No. 72, Attachment 2, p. 12. Shortly

thereafter, Trooper Magnuson went to Clearfield Hospital to interview Lyras. During the interview,

Lyras indicated that he had been distracted because Smith's tractor trailer appeared to be coming into

the left lane. Document No. 72, Attachment 2, p. 11. Lyras apparently crashed into Schlosser's SUV

because of his preoccupation with observing the apparent change of lane by Smith's tractor trailer.

At the request of Trooper Magnuson, Trooper Kenneth P. Hofer, Jr. (hereinafter "Trooper

Hofer"), traveled to Altoona Hospital to interview Schlosser, Davies and Frederick. All three had been

transported to Altoona Hospital in helicopters. Document 72, Attachment 2, pp. 15-16. In the police

report, their comments are set forth verbatim. At 12:14 p.m., Davies stated as follows:

"We were going west on I-80. We were in the left lane and there was a truck, then a car,
and a tractor trailer behind the car in the right lane. They were each on each other's rear
end in the right lane. I could see the tractor trailer coming at us. It came into our lane
and hit the front-right part of our car with the trailer part of the truck. After that, all I
remember is rolling. I'm sure the tractor trailer merged into our lane."

Document No. 72, Attachment 2, p. 15. Trooper Hofer interviewed Frederick at 12:23 p.m. During the

interview, she stated as follows:

"I was sitting in the second row on the right. Jean was in the middle beside me, and her
husband, Bill, was on the left of her. It happened so quick. Something hit us hard and
it felt like I was on a roller coaster. Afterwards, Bill was on top of me stuck in his
seatbelt. I never saw what hit us. It was like a bomb."

Document No. 72, Attachment 2, p. 15. Finally, at 12:28 p.m., Trooper Hofer spoke with Schlosser,

who had been driving the SUV at the time of the accident. Her comments were as follows:

> "We were in the left lane going around 65-67 miles per hour. I remember a smaller
> truck, a car, and a big truck in the right lane. At one point, I saw the bigger truck
> coming up on the car pretty fast. I remember hoping the big truck wouldn't come in our
> lane. The last thing I remember is the car rolling. I don't know who hit us. I know that
> I never hit the brakes."

Document No. 72, Attachment 2, p. 16. That same day, William Zwick was informed of the death of

his wife.

In November, 2003, Lyras and his employer settled claims related to the accident with William

Zwick and the estate of Genevieve Zwick, paying them \$950,000.00, and Margaret Frederick, paying

her \$225,000.00. Document No. 72, p. 5. Subsequently, on February 6, 2004, Lyras and Liberty

commenced an action for contribution against Moore, River Hill, Smith, Kiefer Transport, and

Schlosser, contending that these parties were liable in contribution for the \$1.175 million paid to

Frederick and the Zwicks. C.A.No. 2004-23J, Document No. 1. On March 26, 2004, the United States

was substituted as a defendant in place of Schlosser. C.A.No. 2004-23J, Document No. 7. In answering

the complaint on May 19, 2004, Moore and River Hill cross-claimed against the United States, Smith

and Kiefer for contribution and indemnity. C.A.No. 2004-23J, Document No. 17. Smith and Kiefer

did likewise on June 9, 2004, filing a cross-claim against Moore, River Hill, and the United States.

C.A.No. 2004-23J, Document No. 20. Nevertheless, on July 23, 2004, the United States filed a motion

to dismiss the complaint against it because Lyras and Liberty had failed to exhaust the relevant

administrative remedies. C.A.No. 2004-23J, Document No. 22. One month later, the Court dismissed

the complaint against the United States without prejudice.

On June 22, 2004, Schlosser and her husband commenced an action against Lyras and Liberty

5

for negligence and recklessness on the date of the accident. See Complaint at Document No. 1. They alleged that Lyras had negligently operated the vacuum truck, that Liberty was vicariously liable for Lyras' negligence, and that Liberty had been independently negligent in entrusting the operation of the vehicle to Lyras. They contended that, as a result of the negligence of Lyras and Liberty, Schlosser had suffered various physical and psychological injuries. Jurisdiction was proper under 28 U.S.C. § 1332(a)(1) because the Schlossers were citizens of Pennsylvania, Lyras was a citizen of Ohio, and Liberty was incorporated under the laws of Ohio and maintained its principal place of business in Ohio. Document 1, pp. 1-2. The Schlossers sought damages in excess of $75,000.00, thereby satisfying the jurisdictional amount for purposes of 28 U.S.C. § 1332(a).[2] That same day, Davies and her husband filed a similar complaint against Lyras and Liberty. C.A. No. 2004-141J, Document No. 1. Lyras and Liberty responded on September 10, 2004, by filing third-party complaints in both cases against Smith, Kiefer, Moore and River Hill, alleging liability in contribution. Document No. 11. The Court consolidated the three cases on October 29, 2004 at C.A.No. 2004-140J.

After receiving notice that the Veterans Administration had denied their claims, Lyras and Liberty proceeded to amend their original complaint and third-party complaints to include actions for contribution against the United States. Document Nos. 25-27. Consequently, the United States was added as a party on December 10, 2004.

---

[2]The complaint alleged that Schlosser had "suffered severe, painful, disabling and permanent injuries including, but not limited to, left elbow laceration and pain, nasal/facial abrasion, back pain, upper chest and shoulder pain, traumatic brain injury, cerebral concussion, neck abrasion, left hand abrasion, post traumatic stress, left arm atrophy, depression, headache, shoulder pain, tear of the labrum of her left shoulder, neck pain, paresthesias, insomnia, fatigue and scarring." Document No. 1, p. 5. The complaint further alleged that she had been forced "to spend various sums of money for medical care and treatment, which expenditures will continue into the future," and that she had "sustained a loss of past, present and future earnings and earning power." Document No. 1, pp. 5-6. Schlosser's husband alleged that he had been "denied the services, consortium, companionship of his wife." Document No. 1, p. 11.

6

Moore and River Hill filed a Motion for Summary Judgment on October 5, 2005, alleging that a *prima facie* case of negligence could not be sustained against them. See Document No. 58, p. 4. On December 15, 2005, the United States filed a Motion to Dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, alleging a lack of subject matter jurisdiction on the ground that the United States had not waived its sovereign immunity for purposes of the instant contribution and indemnity actions. Document No. 71, pp. 2-3. The next day, Smith and Kiefer filed Motions for Summary Judgment, contending that no evidence had been proffered which indicated that they were negligent in relation to the accident. Document Nos. 76-77. All four motions are presently pending before the Court and are, accordingly, the subject of this opinion.

## II. United States' Motion to Dismiss (Document No. 71)

The first issue for consideration is whether the Court has "jurisdiction over the subject matter" of the instant case for purposes of Federal Rule of Civil Procedure 12(b)(1).

Federal Rule of Civil Procedure 12(b) reads in pertinent part: "(b) How Presented. Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter...."

Pursuant to Rule 12(b)(1), the United States has filed a Motion to Dismiss the actions currently pending against it on the ground that "the United States has not waived its sovereign immunity for contribution and indemnity actions" under the present circumstances. (Document No. 71, p. 2). This argument is premised on the rationale that, under the Federal Tort Claims Act (hereinafter "FTCA"),

7

"the substantive law of Pennsylvania applies in this case." (Document No. 71, p. 3). Since the FTCA incorporates the law of Pennsylvania, the United States contends that the Pennsylvania Workmen's Compensation Act (hereinafter "PWCA") forecloses liability. In support of this assertion, the United States contends that the PWCA "has been repeatedly construed by Pennsylvania courts to be a complete shield for employers from defendants seeking contribution or indemnity." (Document No. 71, p. 3).

When presented with a question such as this, there are a few factors that the Court must keep in mind. In various instances, the U.S. Supreme Court has declared that "a waiver of sovereign immunity must be strictly construed in favor of the sovereign." *Orff v. United States*, __U.S.__, 125 S.Ct. 2606, 2610, 162 L.Ed.2d 544, 549 (2005). The United States expressly relies on this principle in support of its current position. (Document No. 102, p. 3).[3] Nevertheless, just two weeks after the United States' last filing regarding the instant matter, the U.S. Supreme Court issued its decision in *Dolan v. United States Postal Service*, __U.S.__, 126 S.Ct. 1252, 163 L.Ed.2d 1079 (2006). In *Dolan*, the Court noted that the general principle that a waiver of sovereign immunity must be construed in favor of the sovereign "is unhelpful in the FTCA context, where unduly generous interpretations of the exceptions run the risk of defeating the central purposes of the statute, which waives the Government's immunity from suit in sweeping language[.]" *Dolan*, 126 S.Ct. at 1260, 163 L.Ed.2d at 1091 (internal quotation marks and citations omitted). Consequently, in deciding the issue presented in this case, the Court is mindful of the U.S. Supreme Court's recent pronouncement regarding the way in which the

---

[3]This position is advanced by the United States in Document No. 102, which is entitled "Defendant's (The United States') Reply to Response of Stephen G. Lyras and Liberty Maintenance in Opposition to United States' Motion to Dismiss." (Document No. 102, p. 2). This reply was filed by the United States on February 8, 2006. (Document No. 102, p. 6).

8

FTCA should be construed.

The issue currently pending before the Court involves the interaction of several different federal

and state statutes. The FTCA states, in pertinent part, as follows:

"The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

If, however, in any case wherein death was caused, the law of the place where the act or omission complained of occurred provides, or has been construed to provide, for damages only punitive in nature, the United States shall be liable for actual or compensatory damages, measured by the pecuniary injuries resulting from such death to the persons respectively, for whose benefit the action was brought, in lieu thereof.

With respect to any claim under this chapter [28 U.S.C. §§ 2671 *et seq.*], the United States shall be entitled to assert any defense based upon judicial or legislative immunity which otherwise would have been available to the employee of the United States whose act or omission gave rise to the claim, as well as any other defenses to which the United States is entitled."

28 U.S.C. § 2674. The United States contends that this statutory language, which incorporates "the law

of the place where the act or omission complained of occurred," precludes the United States from being

liable in contribution for the negligence of Schlosser. (Document 71, p. 3). This is because, under these

circumstances, the PWCA shields employers from contribution and indemnity actions commenced by

third parties who have been forced to pay damages to employees injured as a result of the negligence

of both the employer and the third parties. The relevant portion of the PWCA states as follows:

"In the event injury or death to an employe is caused by a third party, then such employe, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to receive damages by reason thereof, may bring their action

9

at law against such third party, but the employer, his insurance carrier, their servants and agents, employes, representatives acting on their behalf or at their request shall not be liable to a third party for damages, contribution, or indemnity in any action at law, or otherwise, unless liability for such damages, contributions or indemnity shall be expressly provided for in a written contract entered into by the party alleged to be liable prior to the date of the occurrence which gave rise to the action."

77 P.S. § 481(b). The logic of the United States' argument is rather simple. Under Pennsylvania law, Davies, Zrelock, Frederick and the Zwicks would not be able to sue their employer for the negligence of Schlosser, a fellow employee. These individuals, of course, may commence (and, in some cases, have commenced) actions against third parties who contributed to their injuries. These third parties would be precluded from commencing indemnity or contribution actions against Schlosser's employer for her negligence, since the PWCA expressly bars such actions. Therefore, the United States contends that it should be shielded from liability in the same manner in which any other employer in Pennsylvania would be shielded. (Document No. 72, pp. 8-14).

The Motion to Dismiss filed by the United States is opposed by Lyras, Liberty, Moore and River Hill. Lyras and Liberty contend that, for purposes of this issue, Davies, Frederick, Zrelock and the Zwicks were not employees of the United States. (Document No. 92, p. 3). In support of their position, Lyras and Liberty Maintenance call the Court's attention to 77 P.S. § 22, which states that the term "employe" includes "[a]ll natural persons who perform services for another *for a valuable consideration*, exclusive of persons whose employment is casual in character and not in the regular course of the business of the employer, and exclusive of persons to whom articles or materials are given out to be made up, cleaned, washed, altered, ornamented, finished or repaired, or adapted for sale in the worker's own home, or on other premises, not under the control or management of the employer." 77

10

P.S. § 22 (emphasis added). Since the five passengers traveling with Schlosser were working as *volunteers* for the VA, and not *for a valuable consideration*, Lyras and Liberty contend that they were not employees of the United States for purposes of the PWCA. (Document No. 92, p. 3). They go on to state that "because no employer/employee relationship existed between the United States and those volunteers for whose injury or claim contribution is sought, the United States cannot avail itself of the Workmen's Compensation Act's exclusive remedy provision to shield itself from liability for contribution in the actions brought by Liberty Maintenance and Mr. Lyras[.]" (Document No. 92, p. 4).

The United States counters by arguing that when the FTCA is invoked, the employment status of VA volunteers is a question of federal law. (Document 102, pp. 2-6). In support of this position, the United States points to the definitions of the term "employee" as they appear in both the FTCA and the Federal Employment Compensation Act (hereinafter "FECA"). (Document No. 102, p. 3). The FTCA states that the term "Employee of the government" includes, *inter alia*, "persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States, *whether with or without compensation*[.]" 28 U.S.C. § 2671 (emphasis added). Under the FECA, the term "employee" means, *inter alia*, "an individual rendering personal service to the United States similar to the service of a civil officer or employee of the United States, *without pay or for nominal pay*, when a statute authorizes the acceptance or use of the service, or authorizes payment of travel or other expenses of the individual[.]" 5 U.S.C. § 8101(1)(B) (emphasis added). The United States contends that since the employment status of VA volunteers is a question of federal law, and since the five passengers riding with Schlosser on the date of the accident were "employees" of the United States under federal law, the PWCA shields the United States from the indemnity and contribution actions

11

brought by the third parties who were forced to pay damages to the injured employees. (Document No.

102, pp. 2-6).

Since this question is presented within the context of a Motion to Dismiss "for lack of

jurisdiction over the subject matter," the Court looks first to the statute authorizing jurisdiction in a case

in which the United States is a defendant. That statute states, in pertinent part, as follows:

> "Subject to the provisions of chapter 171 of this title [28 U.S.C. §§ 2671 *et seq.*], the
> district courts, together with the United States District Court for the District of the Canal
> Zone and the District Court of the Virgin Islands, shall have exclusive jurisdiction of
> civil actions on claims against the United States, for money damages, accruing on and
> after January 1, 1945, for injury or loss of property, or personal injury or death caused
> by the negligent or wrongful act or omission of any *employee of the Government* while
> acting within the scope of his office or employment, under circumstances where the
> United States, if a private person, would be liable to the claimant in accordance with the
> law of the place where the act or omission occurred."

28 U.S.C. § 1346(b)(1) (emphasis added). It is clear that the phrase "employee of the Government"

incorporates the definition of that term appearing in the FTCA. The statutes expressly cross-reference

each other. The relevant portion of 28 U.S.C. § 2671 states that the definitions of the terms defined

therein apply to 28 U.S.C. § 1346(b). 28 U.S.C. § 2671. The jurisdictional statute unambiguously

states that it is "[s]ubject to the provisions of" the FTCA. 28 U.S.C. § 1346(b)(1). Therefore, it appears

that Congress intended to define the employer/employee relationship as a matter of federal law in 28

U.S.C. § 2671, and that the language "the law of the place where the act or omission occurred"

contained in 28 U.S.C. § 1346 above impliedly excludes state laws defining who is (or is not) an

"employee" for purposes of the substantive tort law principles along with its cross-reference to the

FTCA. Nevertheless, Lyras and Liberty contend that the analysis is much more complex than that

12

because, "by the very language of [28 U.S.C. § 1346(b)(1)], *federal law does not govern* the status of

the claimants in this action." (Document No. 107, p. 4). They go on to assert that, "because the United

States has waived its general immunity by way of the FTCA, it must face liability just as a private

individual would under these circumstances." (Document No. 107, pp. 4-5).

Davies and Schlosser have filed a brief in support of the position taken by the United States on

this issue. (Document No. 105). In addition to the arguments advanced by the United States, Davies

and Schlosser contend that the Court's examination of this issue should occur in light of the following

language in the FECA:

> "The liability of the United States or an instrumentality thereof under this subchapter
> [5 U.S.C. §§ 8101 *et seq.*] or any extension thereof with respect to the injury or death
> of an employee is exclusive and instead of all other liability of the United States or the
> instrumentality to the employee, his legal representative, spouse, dependents, next of
> kin, and any other person otherwise entitled to recover damages from the United States
> or the instrumentality because of the injury or death in a direct judicial proceeding, in
> a civil action, or in admiralty, or by an administrative or judicial proceeding under a
> workmen's compensation statute or under a Federal tort liability statute. However, this
> subsection does not apply to a master of a crew of a vessel.

> ****

> If an injury or death for which compensation is payable under this subchapter [5 U.S.C.
> §§ 8101 *et seq.*] is caused under circumstances creating a legal liability in a person other
> than the United States to pay damages, and a beneficiary entitled to compensation from
> the United States for that injury or death receives money or other property in satisfaction
> of that liability as the result of suit or settlement by him or in his behalf, the beneficiary,
> after deducting therefrom the costs of suit and a reasonable attorney's fee, shall refund
> to the United States the amount of compensation paid by the United States and credit
> any surplus on future payments of compensation payable to him for the same injury. No
> court, insurer, attorney, or other person shall pay or distribute to the beneficiary or his
> designee the proceeds of such suit or settlement without first satisfying or assuring
> satisfaction of the interest of the United States. The amount refunded to the United

13

States shall be credited to the Employees' Compensation Fund. If compensation has not been paid to the beneficiary, he shall credit the money or property on compensation payable to him by the United States for the same injury. However, the beneficiary is entitled to retain, as a minimum, at least one-fifth of the net amount of the money or other property remaining after the expenses of a suit or settlement have been deducted; and in addition to this minimum and at the time of distribution, an amount equivalent to a reasonable attorney's fee proportionate to the refund to the United States."

5 U.S.C. §§ 8116(c), 8132. These parties point out that the Department of Labor (hereinafter "DOL") "has paid benefits to Darlene Davies as a volunteer pursuant to [the] FECA." (Document No. 105, p. 4). Therefore, it is clear that, from the perspective of the United States, Davies and the other passengers traveling in the SUV were acting as VA employees.

At the outset, it is worth noting that the FECA does not independently bar third-party indemnity and contribution actions brought against the United States. In *Lockheed Aircraft Corp. v. United States*, 460 U.S. 190, 103 S.Ct. 1033, 74 L.Ed.2d 911 (1983), the U.S. Supreme Court explained that the FECA "was designed to protect the Government from suits under statutes, such as the Federal Tort Claims Act, that had been enacted to waive the Government's sovereign immunity." *Lockheed Aircraft Corp.*, 460 U.S. at 193-194, 103 S.Ct. at 1036, 74 L.Ed.2d at 917. Paraphrasing language from its prior decision in *Weyerhaeuser S.S. Co. v. United States*, 372 U.S. 597, 83 S.Ct. 926, 10 L.Ed.2d 1 (1963), the Court declared that there was no evidence that Congress, in enacting the FECA, "was concerned with the rights of unrelated third parties, much less of any purpose to disturb settled doctrines of [tort] law affecting the mutual rights and liabilities of private [parties] in [indemnity] cases." *Lockheed Aircraft Corp.*, 460 U.S. at 196, 103 S.Ct. at 1037-1038, 74 L.Ed.2d at 918 (brackets in original). In determining that the FECA did "not directly bar a third-party indemnity action against the United States[,]" the Court

14

noted that the ultimate resolution of the case would depend on whether "Lockheed had a right to indemnity under the governing substantive law." *Lockheed*, 460 U.S. at 199, 103 S.Ct. at 1039, 74 L.Ed.2d at 920.

The United States relies on *In re: McAllister Towing and Transport Company, Inc.*, 432 F.3d 216 (3d Cir. 2005), for the proposition that "permitting third parties to recover on contribution claims against the United States frustrates [the FECA] and undermines the entire statutory scheme by subjecting the United States to unlimited and indeterminate liability for injuries to its employees." (Document No. 102 p. 5).[4] Nevertheless, *McAllister* cannot be read that broadly, given the contrary language expressed by the U.S. Supreme Court in *Lockheed Aircraft Corp.* In *McAllister*, the Court of Appeals noted that, under both *Weyerhaeuser* and *Lockheed Aircraft Corp.*, the FECA's "exclusivity provision does not, by its terms, bar contribution claims against the United States by third parties who are sued by [a federal employee]." *McAllister*, 432 F.3d at 217. Therefore, it was necessary to look "to the underlying cause of action and determine whether it [was] viable based on the state of the law, *which can include general legal principles as well as a particular statutory scheme*." *McAllister*, 432 F.3d at 222 (emphasis added). The Court of Appeals determined that, under maritime law, contribution and indemnity actions were available to a third party only if that party and the party from whom contribution or indemnity was sought shared a common liability to the party who was able to recover on the

---

[4] The United States does not argue that the PWCA is pre-empted by the FECA to the extent that its narrow definition of the term "employe" conflicts with the FECA's broader definition of the term "employee." The U.S. Supreme Court has recognized that implied pre-emption can be found "where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Sprietsma v. Mercury Marine*, 537 U.S. 51, 65, 123 S.Ct. 518, 527, 154 L.Ed.2d 466, 479 (2002). Since the United States has not articulated a clear argument for pre-emption, the Court expresses no opinion as to whether implied pre-emption could be found under the present circumstances.

underlying action. *McAllister*, 432 F.3d at 224-225.

In their brief, Davies and Schlosser contend that *McAllister* controls the instant case. (Document No. 105 pp. 6-9). In so contending, they appear to place a greater degree of reliance on *McAllister* than does the United States. In any event, the Court is not convinced that *McAllister* is directly controlling in this case. None of the parties supporting the United States' Motion to Dismiss have made the argument that *Pennsylvania law* precludes a third party from recovering a contribution or indemnity award where the party from whom the recovery is sought cannot be held directly liable by the injured party to whom the original monetary damages were awarded. While the PWCA operates as a bar to such a suit in the circumstances directly governed by it, the source of the underlying cause of action exists apart from the PWCA. As the Court of Appeals explained, "the right to contribution or indemnity either does or does not exist as a matter of law, separate and apart from the exclusivity provision." *McAllister*, 432 F.3d at 222. There is no dispute over the fact that, if the five passengers who were riding in the SUV with Schlosser were employees of the United States within the meaning of the PWCA, the present contribution and indemnity actions against the United States would be barred. Nonetheless, it is clear that these individuals were *not* employees of the United States if the PWCA's definition of the term "employe" is deemed to be controlling in this case. Therefore, *McAllister* can directly control this case only if, as a matter of *general Pennsylvania contribution and indemnity law*, third parties may recover contribution and indemnity awards only where the judgment creditor could have pursued an action against the party from whom contribution or indemnity is sought by the judgment debtor.

16

The United States relies on *Eagle-Picher Industries, Inc. v. United States*, 846 F.2d 888 (3d Cir. 1988). (Document No. 72, pp. 8-14). It is true that, in *Eagle-Picher Industries, Inc.*, the Court of Appeals observed that "Pennsylvania law, which applies here, bars third-party actions against tortfeasors who are not directly liable." *Eagle-Picher Industries, Inc.*, 846 F.2d at 891.[5] In so stating, the Court of Appeals relied on the Pennsylvania Supreme Court's decision in *Builders Supply Co. v. McCabe*, 77 A.2d 368 (Pa. 1951). *Eagle-Picher Industries, Inc.*, 846 F.2d at 891. *Builders Supply Co.*, however, was not an authoritative determination of Pennsylvania law. Instead, the Pennsylvania Supreme Court applied the law of the State of Ohio. *Builders Supply Co.*, 77 A.2d at 370-375. Any references to Pennsylvania law were not dispositive in that case. Furthermore, the context in which those references were made were not even remotely similar to the circumstances of the present case. For these reasons, *Eagle-Picher Industries, Inc.* does not control this case.

The United States places a significant degree of reliance on *Giannuzzi v. Doninger Metal Products*, 585 F.Supp. 1306 (W.D. Pa. 1984). (Document No. 72, pp. 9-14). In that case, the Court stated as follows:

---

[5]The cursory treatment given to this issue of Pennsylvania law by the Court of Appeals indicates that it was most likely not in direct contention. *Eagle-Picher Industries, Inc.*, 846 F.2d at 891. The Court of Appeals apparently assumed, rather than held, that Pennsylvania law precluded a judgment debtor from obtaining a contribution or indemnity award from a joint tortfeasor who could not be sued directly by the judgment creditor. This may be inferred from the fact that the state law issue was not among the three issues identified by the Court of Appeals as being in contention. *Eagle-Picher Industries, Inc.*, 846 F.2d at 889. This Court is unwilling to assume that the Court of Appeals' observation in *Eagle-Picher Industries, Inc.* was correct. This unwillingness is based on two independent reasons. First of all, none of the parties in the instant case have argued that Pennsylvania law, *independent of the PWCA*, precludes contribution and indemnity actions against a joint tortfeasor who is not directly liable to the party to whom monetary damages in the underlying action were paid. Secondly, if it were clear that Pennsylvania law did, in fact, bar contribution and indemnity actions under these circumstances, the language in 77 P.S. § 481(b) shielding employers from such actions by third parties would be superfluous and unnecessary. The Pennsylvania Legislature most likely enacted the statutory prohibition because, otherwise, third parties *could* pursue such contribution or indemnity actions.

17

"To summarize, the United States has waived its immunity in tort actions by enacting the Federal Tort Claims Act. The United States is liable in tort to the same extent as a private employer in like circumstances. In a tort action, the United States assumes the characteristics of a private employer, and the court should not consider its governmental characteristics when determining liability. The substantive law of Pennsylvania provides the cause of action and the federal government, in its assumed role of a private entity, is subject to the liability and immunity offered by state law. In the present case, the United States is immune from liability because state law provides that a private employer is immune in like circumstances."

*Giannuzzi*, 585 F.Supp. at 1310. Lyras and Liberty do not dispute the applicability of the principles discussed in *Giannuzzi*. (Document No. 107, p. 4). Instead, they argue that a private employer would not be "immune in like circumstances" because the parties to whom the damages were paid were not "employes" of the United States within the meaning of the PWCA. (Document No. 107 pp. 4-5). This argument is illustrative of the unique circumstances of the present case. *McAllister*, *Eagle-Picher Industries, Inc.* and *Giannuzzi* differ from the present case in that they all involved situations in which the injured parties were clearly "employees" for purposes of both federal and state law. None of them presented the question that is currently pending before the Court.[6] Consequently, the Court must determine whether the employer/employee relationship between the United States and the VA volunteers is governed by federal or state law.

Davies and Schlosser argue that since the DOL accepted Davies' claim for benefits under the

---

[6]In their Brief in Opposition to the United States' Motion to Dismiss, Moore and River Hill attempt to distinguish *Eagle-Picher Industries, Inc.* and *Giannuzzi* by arguing that, in this case, it is the U.S. employee's own negligence for which contribution or indemnity is sought. (Document No. 95, pp. 4-7). The Court finds this argument unpersuasive. Since the employer is vicariously liable under Pennsylvania law for the torts committed by its employees, it makes no difference whether the third-party contribution or indemnity suit is brought on the basis of the negligence of the employer or the employee. Although there may be a *practical* difference between the two alternative situations, Moore and River Hill have not pointed to any precedents which indicate that such a difference exists in the *legal* sense.

18

FECA, the DOL's determination of her employee status is "entitled to the degree of deference called for by *Skidmore v. Swift*, 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944)." (Document No. 105, p. 5). This argument, however, deals only with a collateral issue. There is no question that the five passengers riding in the SUV were employees of the United States for purposes of federal law. Indeed, the Court has before it documentation which indicates that both Davies and Frederick were treated as United States employees for purposes of the FECA. (Document No. 102, Attachments 1 and 2). The FECA would clearly bar any actions brought by the five passengers against the United States for Schlosser's alleged negligence. This is because Congress, in enacting the FECA, adopted the *quid pro quo* typically found in workers' compensation statutes: "employees are guaranteed the right to receive immediate, fixed benefits, regardless of fault and without need for litigation, but in return they lose the right to sue the Government." *Lockheed Aircraft Corporation*, 460 U.S. at 194, 103 S.Ct. at 1036, 74 L.Ed.2d at 917. Nevertheless, this case is governed by the FTCA, which incorporates the substantive law of Pennsylvania. The only question that remains is whether "the law of the place where the act or omission occurred" includes the PWCA's narrow definition of the term "employe." 28 U.S.C. §§ 1346(b)(1), 2674; 77 P.S. § 22. If so, the United States has waived its sovereign immunity for purposes of the pending contribution and indemnity actions. If not, the Court is without jurisdiction to entertain these actions against the United States.

In support of their argument that the five passengers were not employees of the United States under the PWCA, Lyras and Liberty Maintenance rely on the Pennsylvania Commonwealth Court's decision in *Wolf v. Worker's Compensation Appeal Board (County of Berks/Office of the Aging)*, 705 A.2d 483 (Commw. Ct. 1997). (Document No. 107, p. 2). *Wolf* does not help their argument in the

19

least. The only thing that *Wolf* establishes is that volunteers, who do not work for a *valuable consideration*, are not "employes" for purposes of the PWCA. That fact is clear from the statutory definition itself, and it is not even disputed by the United States. 77 P.S. § 22. *Wolf* says nothing about whether volunteers working for the United States should be treated as employees for purposes of the substantive provisions of the PWCA because *federal law* classifies them as employees of the United States. Lyras and Liberty Maintenance have presented no authority for their position that the PWCA's definition, rather than the FTCA's definition, should govern the line of demarcation between employees and non-employees within the context of the present controversy.

In support of its position that the FTCA's definition should control the instant case, the United States relies on a significant line of authority establishing that the employment status of an individual working for the United States "is a question of federal law whenever the jurisdiction of the FTCA is invoked." (Document No. 102, p. 3). The United States calls the Court's attention to *Logue v. United States*, 412 U.S. 521, 93 S.Ct. 2215, 37 L.Ed.2d 121 (1973), *Robb v. United States*, 80 F.3d 884 (4th Cir. 1996), *Means v. United States*, 176 F.3d 1376 (11th Cir. 1999), and *Ezekiel v. Michel*, 66 F.3d 894 (7th Cir. 1995). (Document No. 102 p. 3). Under the FTCA, the term "federal agency" includes "the executive departments, the judicial and legislative branches, the military departments, independent establishments of the United States, and corporations primarily acting as instrumentalities or agencies of the United States, but does not include any contractor with the United States." 28 U.S.C. § 2671. In *Logue*, the U.S. Supreme Court held that state officials responsible for federal prisoners being held in a state facility pursuant to a contract with the Federal Bureau of Prisons were not employees of the United States for purposes of the FTCA. *Logue*, 412 U.S. at 532-533, 93 S.Ct. at 2221-2222, 37

20

L.Ed.2d at 129-131. In so holding, the Court explained:

> "Congress, of course, could have left the determination as to whose negligence the Government should be liable for under the Federal Tort Claims Act to the law of the State involved, as it did with other aspects of liability under the Act. But it chose not to do this, and instead incorporated into the definitions of the Act the exemption from liability for injury caused by employees of a contractor. While this congressional choice leaves the courts free to look to the law of torts and agency to define 'contractor,' it does not leave them free to abrogate the exemption that the Act provides."

*Logue*, 412 U.S. at 528, 93 S.Ct. at 2220, 37 L.Ed.2d at 128. This language strongly supports the Government's position that while the *liability* of the United States under the FTCA is determined by the law of the State in which the alleged negligence occurred, the *employment status* of an individual working for the United States remains a question of federal law. (Document No. 102, p. 3).

In *Robb*, the U.S. Court of Appeals for the Fourth Circuit relied on *Logue* to hold that physicians who had contracted with the Air Force to provide services at a base were independent contractors and, therefore, not employees of the United States under the FTCA. *Robb*, 80 F.3d at 894. Similarly, in *Means*, the U.S. Court of Appeals for the Eleventh Circuit held that county law enforcement officials who acted "on behalf of a federal agency" were not employees of the United States for FTCA purposes. *Means*, 176 F.3d at 1379-1381. Finally, in *Ezekiel*, the U.S. Court of Appeals for the Eleventh Circuit concluded that a physician participating in a psychiatric rotation residency program at a VA hospital without receiving compensation for doing so was an employee of the United States under the FTCA. *Ezekiel*, 66 F.3d at 897-902. In all three cases, the employment status of the individuals involved was treated as a question of federal law.

The instant case is different from *Logue*, *Robb*, *Means* and *Ezekiel*. Unlike those cases, this case

21

does not turn on the question of whether the term "Employee of the government" is broad enough to include Davies, Frederick, Zrelock and the Zwicks. 28 U.S.C. § 2671. It is undisputed that they were employees of the United States within the meaning of the FTCA. The question before the Court is whether their employee status pursuant to the FTCA carries the same force when the substantive law governing the case is the tort law of a State which does not treat persons performing similar functions for private entities as employees of those entities. While there are other cases addressing the question of whether a particular individual qualifies as an "employee of the government" under the FTCA, the Court has discovered none which speak to the precise issue presented in the instant case. *See Wood v. Standard Products Company, Inc.*, 671 F.2d 825 (4th Cir. 1982); *Leone v. United States*, 910 F.2d 46 (2d Cir. 1990); *Cavazos v. United States*, 776 F.2d 1263 (5th Cir. 1985); *Lurch v. United States*, 719 F.2d 333 (10th Cir. 1983); *Brooks v. A.R.&S. Enterprises, Inc.*, 622 F.2d 8 (1st Cir. 1980); *United States v. Becker*, 378 F.2d 319 (9th Cir. 1967); *Blackwell v. United States*, 321 F.2d 96 (5th Cir. 1963); *United States v. Hainline*, 315 F.2d 153 (10th Cir. 1963); *Pattno v. United States*, 311 F.2d 604 (10th Cir. 1962); *Dumansky v. United States*, 486 F.Supp. 1078 (D.N.J. 1980). In any event, however, the logic of these cases undoubtedly leads to the conclusion that federal law governs the employment status of the VA volunteers involved in the present matter.

In so concluding, this Court is mindful of the fact that Congress' primary purpose for defining the employment status of federal workers in the FTCA was to narrow, rather than broaden, the class of persons deemed to be employees of the United States. As the U.S. Supreme Court explained in *United States v. Orleans*, 425 U.S. 807, 96 S.Ct. 1971, 48 L.Ed.2d 390 (1976), "[t]he Tort Claims Act was never intended, and has not been construed by this Court, to reach employees or agents of all federally

22

funded programs that confer benefits on people." *Orleans*, 425 U.S. at 813, 96 S.Ct. at 1975, 48 L.Ed.2d at 397. Nonetheless, if the federal definition controls when it serves to narrow the category of persons considered to be employees of the United States, it must likewise control when its effect is to broaden that category. In either case, "state law governs the substantive duties of the United States under the FTCA," while federal law governs the determination of whether a given individual is an employee of the United States. *Robb*, 80 F.3d at 887.

The statutory language in 28 U.S.C. §§ 1346(b)(1) and 2671 has consistently been construed to place the employment status of federal workers under the control of federal law. The decision of Congress to incorporate the FTCA's definition of the term "employee of the government" into the language of the jurisdictional statute evidences a legislative intent to control not only the category of persons for whose acts or omissions the United States will be liable, but also the category of cases in which a federal court will exercise adjudicatory jurisdiction. Since the words appearing in these statutes have been construed to govern the employment status of federal workers in the category of cases in which state law defines the term "employee" more broadly than the FTCA, they must be construed in a similar manner in the category of cases in which state law defines the term "employee" more narrowly than the FTCA. "To give these same words a different meaning for each category would be to invent a statute rather than interpret one." *Clark v. Martinez*, 543 U.S. 371, 378, 125 S.Ct. 716, 722-723, 160 L.Ed.2d 734, 745 (2005). The FTCA itself determines the line of demarcation between those persons who are employees of the Government and those who are not. This is true regardless of whether the otherwise applicable state law defines the employment relationship between similarly situated private parties more broadly or more narrowly than the federal statute.

23

It is undisputed that the law governing the substantive rights and obligations of the parties is the law of the Commonwealth of Pennsylvania. The Court has determined that "the law of the place where the act or omission occurred" does not include Pennsylvania's narrow definition of the term "employe." 28 U.S.C. § 1346(b)(1); 77 P.S. § 22. For purposes of this case, Davies, Frederick, Zrelock and the Zwicks were acting as employees of the United States at the time of the accident. Under the law of Pennsylvania, the contribution and indemnity actions pending against the United States are barred by the PWCA. 77 Pa.C.S. § 481(b). The United States, "if a private person, would [not] be liable" under Pennsylvania law to the parties currently seeking to advance their contribution and indemnity claims. 28 U.S.C. § 1346(b)(1). Accordingly, this Court has no jurisdiction under 28 U.S.C. § 1346(b)(1) to entertain the actions commenced against the United States. Pursuant to Federal Rule of Civil Procedure 12(b)(1), the United States has filed a Motion to Dismiss the instant contribution and indemnity claims. (Document No. 71). That Motion must be granted.

## III.    Motions for Summary Judgment (Document Nos. 58/108, 76, 77)

### A.    Summary Judgment Standards

"Summary judgment is appropriate only when it is demonstrated that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-32, 106 S.Ct. 2548, 2552-57, 91 L.Ed.2d 265, 273-280 (1986); Fed.R.Civ.P. 56(c). An issue of material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 211-212 (1986). In deciding a motion for summary judgment, all reasonable inferences must be drawn in favor of the non-movant. *Oritani [Sav. And Loan Ass'n v. Fidelity and Deposit Co.*, 989 F.2d 635, 638]."

*Troy Chemical Corp. v. Teamsters Union Local No. 408*, 37 F.3d 123, 125-126 (3d Cir. 1994).

24

"As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted. See generally 10A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2725, pp. 93-95 (1983). This materiality inquiry is independent of and separate from the question of the incorporation of the evidentiary standard into the summary judgment determination. That is, while the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs. Any proof or evidentiary requirements imposed by the substantive law are not germane to this inquiry, since materiality is only a criterion for categorizing factual disputes in their relation to the legal elements of the claim and not a criterion for evaluating the evidentiary underpinnings of those disputes."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 211 (1986).

## B. Motion for Summary Judgment filed by Moore and River Hill

Moore and River Hill have filed a Motion for Summary Judgment, contending that the discovery process has produced no evidence that Moore's operation of the Dodge Intrepid contributed to the accident. (Document Nos. 58 and 108). Since this Court's jurisdiction is predicated on the diverse citizenship of the parties, the applicable substantive law is the law of the Commonwealth of Pennsylvania.[7] *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78-80, 58 S.Ct. 817, 822-823, 82 L.Ed. 1188, 1194-1195 (1938). In *Atcovitz v. Gulph Mills Tennis Club, Inc.*, 812 A.2d 1218 (Pa. 2002), the Supreme Court of Pennsylvania stated as follows:

---

[7]The Court is bound to apply the choice of law rules applicable in the Commonwealth of Pennsylvania. *Klaxon Company v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496-497, 61 S.Ct. 1020, 1021-1022, 85 L.Ed. 1477, 1480-1481 (1941). Moore and River Hill proceed on the assumption that the applicable substantive law in this case is the law of Pennsylvania. (Document No. 60 p. 4). Lyras and Liberty do not take issue with this assumption. (Document No. 66). Consequently, there is no need for the Court to consider whether the law of any other jurisdiction should be applied with respect to any of the issues in this case.

25

"The elements necessary to plead an action in negligence are: (1) the existence of a duty or obligation recognized by law, requiring the actor to conform to a certain standard of conduct; (2) a failure on the part of the defendant to conform to that duty, or a breach thereof; (3) a causal connection between the defendant's breach and the resulting injury; and (4) actual loss or damage suffered by the complainant."

*Atcovitz*, 812 A.2d at 1222. The first and fourth elements of the cause of action are not disputed in this case. No party denies that all motorists have a duty to exercise reasonable care in the operation of their vehicles, nor does any party deny the existence of actual damages resulting from the accident. The matters in contention concern whether particular parties breached this duty of reasonable care and, if so, whether such breach or breaches proximately caused the resulting damage. For purposes of the Motion for Summary Judgment filed by Moore and River Hill, the Court assumes *arguendo* that Moore breached his duty of reasonable care on the date in question.

The operative material facts that are not in dispute among the parties are as follows:[8]

On June 26, 2002, Debra Schlosser was an employee of the United States Department of Veteran Affairs ("VA"). On that date, Mrs. Schlosser was transporting VA volunteers from Wilkes-Barre, Pennsylvania to Erie, Pennsylvania to attend a conference on volunteerism in a government-owned Ford Expedition ("Schlosser vehicle"). At the time of the accident, Mrs. Davies was the front-seat passenger. Other

---

[8]The following facts are the proposed statements of material facts not in dispute submitted by Moore and River Hill, (Document No. 59) responses thereto submitted by Lyras and Liberty, (Document No. 65) additional proposed statements of material facts not in dispute submitted by Lyras and Liberty (Document No. 65) and responses thereto by Moore and River Hill (Document No. 89). Any omitted facts which were proposed to the Court that are not included have been excluded because they have been determined by the Court to remain in dispute between the parties for purposes of this summary judgment motion. See Local Rule of Court 56.1.

passengers Margaret Frederick, William Zwick and Genevieve Zwick were passengers in the second row seat and John Zrelock was seated in the third row of seats. As Mrs Schlosser approached the on ramp, three vehicles including a triaxle truck, passenger vehicle, and flatbed trailer were traveling on the on ramp. Larry Moore was the operator of the passenger vehicle. Merle Smith was the operator of the flatbed trailer. [T]raveling in the left lane and having not yet passed either the tri-axle truck, passenger vehicle or flatbed trailer, the Schlosser vehicle was hit from behind by a vacuum truck driven by Stephen Lyras. After impact, the Schlosser vehicle collided with the flatbed trailer. At the time of the accident, the flatbed trailer was being operated by Merle Smith. Following the second impact, the Schlosser vehicle rolled multiple times and came to a rest on the median off the left side of Interstate 80 West. Mrs. Zwick was ejected from the Schlosser vehicle and killed. The remaining passengers and Mrs. Schlosser were removed from the vehicle by emergency medical technicians and transported to various hospitals for treatment. Pennsylvania State Police Officer Richard L. Magnuson investigated the accident. Following his investigation, Trooper Magnuson completed a police report setting forth details of his investigation.

A close examination of the record indicates that there is no genuine issue of material fact with regard to the issue of causation. Lyras and Liberty emphasize the language in a report prepared by Richard E. Keefer which indicates that "[t]he respective vehicle movements created a box that limited evasive maneuvers and constrained the continuous flow of traffic." (Document Nos. 66 p. 5, 93, Exhibit E, p. 6). However, the undisputed facts do not reveal actions on the part of Moore as being a

27

possible cause of the collisions alleged in the case *sub judice*.

Lyras and Liberty point out that Moore admitted moving into the left lane, ahead of the SUV, immediately before the accident occurred. Document No. 66, p. 4. It is true that Moore made such an admission in his deposition. (Document No. 65, Exhibit C, p. 16). Nonetheless, there is virtually no evidence at all which suggests that the movement of Moore's vehicle into the left lane had a direct impact on the movements of the other vehicles.

Lyras and Liberty contend that "the truth as to where [Moore's] vehicle was located and what he was doing immediately prior to and during the accident is an issue of fact which must, by law, be left to a jury for determination." (Document No. 66, p. 4). Nevertheless, as noted earlier, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 211 (1986). Even assuming that Moore breached his duty of reasonable care, Pennsylvania law requires "a causal connection between the defendant's breach and the resulting injury" before one can be held liable for negligence. *Atcovitz*, 812 A.2d at 1222. Since the undisputed material facts indicate that Lyras impacted upon Schlosser's vehicle, that Moore's vehicle did not collide or impact with another vehicle, and even assuming Lyras' and Liberty Maintenance's argument that Moore was in the left lane in front of Schlosser is correct, although this fact is in dispute, there is still no genuine issue of material fact with regard to the issue of causation and

28

Moore and River Hill are entitled to judgment as a matter of law.[9] Accordingly, the Court must grant the Motion for Summary Judgment filed by Moore and River Hill. (Document Nos. 58 and 108).

## C. Motions for Summary Judgment filed by Smith and Kiefer (Document Nos. 76-77).

Smith and Kiefer have also filed Motions for Summary Judgment. In support of their position, they point to evidence that Smith kept the tractor-trailer in the right lane at the time of the accident. Document No. 82, pp. 5-6. Lyras and Liberty respond by contending that Smith may have been negligent even if he did keep the tractor-trailer in the right lane. They specifically argue that "negligence could be based on a finding that Smith failed to yield to the traffic approaching the on-ramp, a finding that Smith failed to exercise reasonable care in the operation and handling of his vehicle while merging and once on the highway, or [findings related to] any combination of Smith's actions and inactions." Document No. 94, p. 4.

The operative material facts that are not in dispute among the parties are as follows:[10]

---

[9]Although the Court proceeds on the assumption that Moore breached a duty of care when he allegedly switched lanes, the arguments advanced by Lyras and Liberty are unconvincing. Even if it is true that the actions of Moore contributed to the creation of "a box that limited evasive maneuvers and constrained the continuous flow of traffic," the same is true of red lights, traffic congestion, guard rails, homes, buildings, etc. Document No. 66, p. 5. This is not a case in which an emergency vehicle was blowing a siren, thereby creating an expectation that all other vehicles move out of the way and cease to be an impediment to the immediate travel of a particular vehicle. The presence of additional vehicles on a roadway almost always constrains the continuous flow of traffic to some extent. That does not mean that the operator of every vehicle on a busy roadway is liable in contribution for accidents where evasive action was constrained to some degree by the presence of traffic.

Additionally, if the Court were not to assume that Moore breached the duty of care, the act of merging into the left lane from the right lane has not been proven to cause the breach of any legal duty under the known facts and present circumstances.

[10]The following facts are the proposed statements of material facts not in dispute submitted by Smith and Kiefer, (Document No. 81) responses thereto submitted by Moore and River Hill, (Document No. 96) additional proposed statements of material facts not in dispute submitted by Moore and River Hill (Document No. 96). Any omitted facts which were proposed to the Court that are not included have been excluded because they have been determined by the Court to remain in dispute between the parties for purposes of this summary judgment motion. See Local Rule of Court 56.1.

Plaintiffs Schlosser and Davies, among others, were traveling along Interstate 80 on June 26, 2002 in a Ford Expedition SUV. Plaintiff Schlosser was driving a Ford Expedition westbound when she approached an on-ramp near the scene where the accident ultimately occurred. Plaintiff Davies was in the front passenger seat of the SUV. Plaintiff Davies saw three (3) vehicles approach the highway at an on-ramp while she was traveling in the left hand lane. Plaintiff Davies recalled the three (3) vehicles at the on-ramp were a coal truck, a sedan, and a flatbed tractor trailer. The driver of the sedan, the second vehicle described above, was driven by Larry R. Moore. [Merle Smith was] the driver of the flatbed truck. Merle Smith['s] [truck] was entering Interstate 80 as the third vehicle in line merging onto the highway described earlier. Plaintiff Davies testified she felt a strong push from behind that pushed the SUV in which she was traveling into the flatbed tractor trailer. She further testified that the Expedition rode alongside the tractor trailer and then flipped and rolled four (4) times and landed on the roof. Plaintiff Davies specifically testified in her deposition that the tractor trailer driven by movant, Merle Smith, and owned by movant, Terry P. Keifer, individually and t/d/b/a Kiefer Transport, did not merge into the left lane where Plaintiffs' vehicle was traveling. Plaintiff Davies specifically testified that they were hit from behind. Plaintiff Schlosser specifically testified at her deposition that the tractor trailer driven by movant, Merle Smith and owned by movant, Terry P. Keifer, individually and t/d/b/a Kiefer Transport, did not merge into the left lane where Plaintiffs' vehicle was traveling. In his deposition, Larry R. Moore also specifically

testified that the tractor trailer driven by movant, Merle Smith, and owned by movant, Terry P. Keifer, individually and t/d/b/a Kiefer Transport, did not merge into the left lane where Plaintiff's vehicle was traveling. Merle Smith testified in his deposition that he did not move his tractor trailer into the left hand lane. Stephen G. Lyras testified that the flatbed tractor trailer operated by Merle Smith and owned by Terry P. Kiefer crossed into the left lane of Interstate 80 West where the Schlosser vehicle and vacuum truck operated by Mr. Lyras were traveling immediately prior to the accident.

At the outset, it is worth noting that the issue of Smith's negligence cannot be resolved solely on the basis of the element of causation. Lyras indicated in his deposition that he believed that Smith was moving the tractor-trailer directly into the left lane after coming from the on-ramp on the right side of the roadway. Smith's testimony contradicts Lyras'. Such conflict is a credibility issue for the trier of fact. The conflict among Lyras' and Smith's respective testimony regarding Smith's possible movement into the left lane of traffic thus creates a genuine issue of material fact as to whether the accident was proximately caused by Smith's negligence and requires that the motions be denied.

31

**AND NOW**, this 6th day of September, 2006, this matter coming before the Court on the United States' Motion to Dismiss (Document No. 71), the Motion for Summary Judgment filed by Larry Moore and River Hill Coal Company(Document Nos. 58 and 108), and the Motions for Summary Judgment filed by Merle Smith and Terry P. Kiefer (Document Nos. 76 and 77), IT IS HEREBY ORDERED THAT the United States' Motion to Dismiss (Document No. 71) is GRANTED, the Motion for Summary Judgment filed by Larry Moore and River Hill Coal Company(Document Nos. 58 and 108) is GRANTED, and the Motions for Summary Judgment filed by Merle Smith and Terry P. Kiefer (Document Nos. 76 and 77) are DENIED.

**BY THE COURT:**

**KIM R. GIBSON,**
**UNITED STATES DISTRICT JUDGE**

cc:     Paul D. Kovac, AUSA
        Anthony J. Rash, Esquire
        Holly M. Whalen, Esquire
        Dennis A. Watson, Esquire
        Warren L. Siegfried, Esquire
        Lawrence A. Durkin, Esquire

32